UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GHASSAN ALBERT HREISH, JR., on behalf of themselves and derivatively on behalf of Nominal Defendant Envirokare Composite Corp., *and* TEAM GROUP LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>STEVE PAPPAS,<br>GEORGE E. KAZANTZIS, *and*<br>GREGORY J. ANGELIDES,<br><br>        Defendants,<br><br>    *and*<br><br>ENVIROKARE COMPOSITE CORP.,<br><br>        Nominal Defendant. | Case No. 24-CV-2284<br><br>Civil Action<br><br><br>**COMPLAINT** |

Plaintiffs GHASSAN ALBERT HREISH, JR. *and* TEAM GROUP LLC, by way of Complaint against Defendants STEVE PAPPAS, GEORGE E. KAZANTZIS and GREGORY J. ANGELIDES, and Nominal Defendant ENVIROKARE COMPOSITE CORP., allege:

**INTRODUCTION**

1.     This is an action raising claims for fraud and declaratory relief arising in connection with the management of Nominal Defendant Envirokare Composite Corp. ("ECC"), a Nevada corporation.

2.     Hreish has been a member of ECC's Board of Directors for a number of years and is currently President. Pappas is a shareholder and was formerly a Board member. Together with other family members, Pappas purports to control a majority of ECC's shares. Kazantzis was a Board member until his removal for cause in January 2024, but falsely purports to be ECC's President.

3.      ECC's primary assets are currently the subject of a lawsuit filed in Delaware Chancery Court (the "DE Lawsuit").[1] Pappas and Kazantzis approached and recruited Hreish in order to obtain funding for the DE Lawsuit, making Hreish a Board member and promising him equity in ECC. Hreish agreed, and to date has provided over $200,000.00 in litigation funding to ECC through Hreish's solely owned company, Team Group LLC ("Team").

4.      However, Kazantzis blocked issuance of shares to Hreish, on information and belief in order to prevent Hreish from acquiring a majority interest in ECC — and to preserve his and Pappas's respective equity positions.

5.      In addition, Kazantzis and Pappas colluded by purporting to give Kazantzis an undisclosed, "secret" employment agreement (the "Kazantzis Agreement") with ECC, purporting to entitle him to either $165,000 per year deferred salary or the equivalent in equity. If valid — which it is not — the Agreement would entitle Kazantzis to an equitable interest in ECC that would outweigh Hreish's equity. The existence of the Kazantzis Agreement, purportedly executed in October 2021, was never presented to or approved by ECC's Board and its very existence was not disclosed until January 2024. On information and belief, the Kazantzis Agreement was not only kept secret from the Board, but also appears to have been forged and/or backdated.

6.      Pappas and Kazantzis colluded to defraud Hreish and Team by soliciting litigation funding in exchange for equity in ECC, blocking Hreish from receiving the shares to which he is entitled, and secretly creating — and possibly forging — the Kazantzis Agreement, in order to unlawfully enrich Kazantzis and block Hreish from attaining majority shareholder status.

---

[1] *Envirokare Composite Corporation v. D&D Manufacturing, LLC et al.*, No. 2022-1202 (Del. Chanc. Ct.).

7.      After the other Board members, Hreish, Daniel Bourke and Walter Gerasimowicz, voted to remove Kazantzis as ECC President in December 2023, Kazantzis purported to hold an annual shareholder's meeting — without notice to or approval by the Board — and unlawfully arranged to have himself and another individual, Defendant Gregory J. Angelides, made purported Board members instead of Hreish, Bourke and Gerasimowicz. That meeting was unlawful and contrary to Nevada law and ECC's by-laws, and any and all actions approved at that meeting are null and void.

8.      In light of the foregoing, Hreish and Team seek judgment for fraud against Pappas and Kazantzis, a declaration that the fraudulent and unlawful Kazantzis Agreement is null and void ab initio, and a declaration that the purported January 2024 annual shareholders' meeting and all business transacted at that meeting are null and void, that Hreish, Bourke and Gerasimowicz continue to comprise ECC's true Board of Directors and that Kazantzis and Angelides are not Board Members.

**PARTIES**

9.      Plaintiff GHASSAN ALBERT HREISH, JR. is an individual residing in Riverside, California.

10.     Plaintiff TEAM GROUP LLC ("Team") is a Wyoming limited liability company headquartered in Riverside, California. Hreish is Team's sole member.

11.     Defendant STEVE PAPPAS is an individual residing in New York, N.Y.

12.     Defendant GEORGE E. KAZANTZIS is an individual residing in Fort Lee, N.J.

13.     Defendant GREGORY J. ANGELIDES is an individual residing in Staten Island, N.Y.

14.     Nominal Defendant ENVIROKARE COMPOSITE CORP. ("ECC") is a Nevada corporation with a business address located in Las Vegas, Nevada.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because the plaintiffs, Hreish and Team, are citizens of California and the non-nominal defendants, Pappas, Kazantzis and Angelides, are citizens of New York and New Jersey (and the nominal defendant, ECC, is a citizen of Nevada), and because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTS

17.     Before serving as President and Board Member of ECC, Pappas was the CEO of ECC's predecessor in interest, Envirokare Tech, Inc. ("ENVK").

18.     In 2005, ENVK sued Pappas, alleging that Pappas had breached his fiduciary duties as its then-CEO.[2]

19.     That lawsuit (the "2005 Pappas Lawsuit") was resolved by a 2006 "Standstill Agreement," pursuant to which, during a five-years time period commencing April 2006, Pappas agreed, among other things, that he would not become an officer of ENVK or any of its affiliates.

20.     Kazantzis, then ENVK's president, signed the Standstill Agreement on ENVK's behalf and had actual knowledge of its terms.

---

[2] *See Envirokare Tech, Inc. v. Pappas,* 420 F. Supp. 2d 291 (S.D.N.Y. 2006).

21. Kazantzis and Pappas formed ECC in January 2010.

22. Shortly thereafter, ENVK transferred its assets, including those currently at issue in the DE Lawsuit, to ECC.

23. In July 2010, ENVK became Xemex Group, Inc. after a reverse merger.

24. Despite the 2006 Standstill Agreement, Pappas continued serving as Xemex's CEO.

25. Kazantzis served as ECC President, Secretary and Board member from its formation until March 2010, when he resigned.

26. Despite the 2006 Standstill Agreement, Pappas also served as ECC Board member from its formation, and took over as President and Secretary upon Kazantzis's resignation.

27. Pappas served as ECC Board member with two other individuals, John Verbicky and Nicholas Pappas, from March 2010. Verbicky resigned from the ECC Board in December 2015, and Nicholas Pappas resigned in January 2016, leaving Defendant Steve Pappas as ECC's sole Board Member.

28. In 2016, Pappas was charged by the SEC in connection with a fraudulent scheme involving secret kickbacks to an undercover FBI agent who Pappas thought was a corrupt hedge fund manager.

29. Pappas admitted liability and stipulated to paying $50,000 in penalties plus a five-year ban on acting as an officer or director of any publicly traded company (among other things).[3]

30. Despite the 2016 SEC Consent Order, Pappas continued to act as ECC's President, Secretary and Director.

---

[3] *See In re Pappas*, SEC No. 3-17194.

31. In or around 2017, Pappas and Kazantzis approached Hreish and Team, seeking investments in ECC, In doing so, Pappas and Kazantzis leveraged Kazantzis's long acquaintance with Hreish.

32. At no time did Pappas or Kazantzis inform Mr. Bourke or Mr. Hreish of the allegations raised against Pappas in the 2005 Envirokare Tech lawsuit.

33. At no time did Pappas or Kazantzis disclose to Mr. Bourke or Mr. Hreish the terms of the Standstill Agreement and/or Pappas's violations thereof.

34. At no time did Pappas or Kazantzis inform Mr. Bourke or Mr. Hreish of the allegations raised against Pappas in the 2016 SEC proceeding,

35. At no time did Pappas or Kazantzis they disclose to them Papas's admitted violations of the Securities Exchange Act of 1934 or the terms of the ensuing SEC Order.

36. Around January 2020, Pappas, acting as sole board member for ECC, appointed Kazantzis, Hreish, Daniel Bourke, and Walter Gerasimowicz as additional board members.

37. Until October 2021, ECC's Board was comprised of Pappas, Kazantzis, Bourke and Hreish, and was actively involved in making decisions about ECC, including with regard to the DE Lawsuit.

38. After the Board was unable to secure other funding for the DE Lawsuit, Team, an entity owned by Hreish, agreed to provide substantial funding on an equity basis, i.e. in exchange for shares.

39. Pappas resigned as ECC President, Secretary and Board member as of October 28, 2021.

40. Gerasimowicz was added to the Board in October 2021, replacing Pappas.

41. From January 2022, the Board was comprised of Kazantzis (as President and Director), Hreish (as Secretary and Director), Bourke (as Treasurer and Director), and Gerasimowicz (as Director).

42. Kazantzis took over as ECC President as of January 2022 but was removed by the Board in December 2023.

43. On January 4, 2024, the Board additionally stripped Kazantzis of all authority to conduct any business on behalf of ECC and/or the Board and directed him to produce a copy of the corporate bylaws by January 14th. The Board warned Kazantzis that failure to comply would result in his permanent removal from the Board.

44. Kazantzis ultimately produced a purported copy of the bylaws (the "Alleged ECC Bylaws"[4]), signed only by him as Secretary, purportedly in January 2010.

45. Kazantzis had actual and constructive knowledge of the terms of the Alleged ECC Bylaws since the day that he signed them..

46. On January 6, 2024, Kazantzis purported to convene an annual stockholders' meeting (the "Alleged Annual Shareholders Meeting").

47. Kazantzis did not notify the other Board members about the Alleged Annual Shareholders Meeting.

48. Kazantzis did not obtain Board approval for scheduling the Alleged Annual Shareholders Meeting.

---

[4] Concerns have been raised that the Alleged ECC Bylaws are fake and were fraudulently back-dated by Kazantzis. Nevertheless, Kazantzis insists that they are genuine and fully binding.

49. Kazantzis was not authorized to schedule the Alleged Annual Shareholders Meeting without the knowledge and approval of the other three Board members, i.e., Hreish, Bourke and Gerasimowicz.

50. Kazantzis purports that a vote was taken at the Alleged Annual Shareholders Meeting, removing Bourke, Gerasimowicz and Hreish from the Board and replacing them with Kazantzis and Angelides.

51. That alleged vote was a legal nullity.

52. On January 11, 2024 Kazantzis purported to file ECC's annual Nevada registration statement, listing himself as President and Treasurer and Angelides as Secretary.

53. Kazantzis's Nevada filing was knowingly fraudulent.

54. Shortly thereafter, Hreish and Bourke removed Kazantzis from ECC's true Board due to his misconduct.

55. Also in January 2024, Kazantzis disclosed to the other Board members, i.e. Hreish and Bourke, an alleged employment agreement purportedly signed in October 2021 by Papas on behalf of ECC as its then-President, purporting to employ Kazantzis as ECC President (the "Alleged Kazantzis Employment Agreement" [5]) in exchange for $165,000 in annual deferred compensation, payable as salary or as equity.

56. The Alleged Kazantzis Employment Agreement was purportedly signed by Pappas just seven (7) days before he himself was forced to resign as ECC's President and CEO.

57. The Alleged Kazantzis Employment Agreement was never approved by the ECC Board.

---

[5] Concerns have been raised that the Alleged Kazantzis Employment Agreement is fake and was fraudulently back-dated by Kazantzis. Nevertheless, Kazantzis insists that it is genuine and fully binding.

58. The other ECC Board members, i.e. Hreish, Gerasimowicz and Bourke, were never informed of the terms of the Alleged Kazantzis Employment Agreement until January 2024.

59. Under the Alleged ECC Bylaws, ECC directors and officers serve without compensation unless compensation is approved by the Board.

60. Kazantzis insists that the Alleged ECC Bylaws are true and binding in all respects.

61. Because the Alleged Kazantzis Employment Agreement was never approved by the Board, it is a legal nullity.

62. Because the Alleged Kazantzis Employment Agreement was never approved by the Board, Kazantzis is not entitled to any compensation whatsoever for his work as President.

63. Hreish, Team and ECC itself have suffered damages by Defendants' misconduct.

64. Hreish and Team were conned by Pappas and Kazantzis into investing hundreds of thousands of dollars in ECC, and hundreds of thousands of dollars more in expenses and "sweat equity", based on the false premise that their equity investment would entitle them to majority shareholder status, without disclosing to them the terms of the Alleged Kazantzis Employment Agreement and that Kazantzis's equity share thereunder would dilute their own, without disclosing to them Pappas's rich history of corporate abuses, financial wrongdoing, defrauding investors, and shady dealing.

65. Pappas and Kazantzis's misconduct and omissions were outrageous and unconscionable, particularly in light of Pappas's long history of corporate malfeasance, Kazantzis's full knowledge of the same, and Pappas and Kazantzis's exploitation of Kazantzis's many years of acquaintance with Hreish in order to defraud him and Team into investing hundreds of thousands of dollars in ECC, as well as uncounted hours of uncompensated time rendered to benefit ECC.

66. ECC has been likewise damaged by the very existence of the Alleged Kazantzis Employment Agreement and Kazantzis's unlawful claims to compensation thereunder.

67. To the extent this Complaint asserts derivative claims on behalf of ECC, demanding that the ECC Board take action to enforce the ECC Bylaws and to protect itself and its shareholders would be futile and is excused for the following reasons:

    a. The true composition of the Board of Directors is disputed. Plaintiffs contend that the true Board is comprised of Hreish, Bourke and Gerasimowicz, but Defendants purport that they, Kazantzis and Angelides, comprise the current Board.

    b. Kazantzis and Angelides each have a personal interest in the purported validity in the Alleged Annual Shareholders Meeting held in January 2024, in particular the purported vote whereby they were improperly made Directors. They are each incapable of acting on ECC's behalf to enforce its by-laws and to invalidate their own Board membership.

    c. Kazantzis has a personal and financial interest in the Alleged Kazantzis Employment Agreement. He is incapable of acting on ECC's behalf to invalidate his own purported employment agreement.

**COUNT I – DECLARATORY JUDGMENT**
*(as to the True Composition of ECC's Board Of Directors)*

68. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

69. As of January 5, 2024 and for a number of years prior, the ECC Board of Directors was comprised of Hreish, Bourke and Kazantzis.

70. On January 6, 2024, Kazantzis purported to convene an annual stockholders' meeting (the "Alleged Annual Shareholders Meeting").

71.   Kazantzis did not notify the other Board members about the Alleged Annual Shareholders Meeting.

72.   Kazantzis did not obtain Board approval for scheduling the Alleged Annual Shareholders Meeting.

73.   Kazantzis was not authorized to schedule the Alleged Annual Shareholders Meeting without the knowledge and approval of the other two Board members.

74.   Kazantzis purports that a vote was taken at the Alleged Annual Shareholders Meeting, removing Bourke, Gerasimowicz and Hreish from the Board and replacing them with Kazantzis and Angelides.

75.   Because the Meeting was unauthorized and unlawful, that alleged vote was a legal nullity.

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment in their favor and against the Defendants, declaring that ECC's true Board of Directors consists of Hreish, Gerasimowicz and Bourke, and awarding such other and further relief that the Court may deem just and proper.

**COUNT II – DECLARATORY JUDGMENT**
*(as to the Alleged Kazantzis Employment Agreement)*

76.   Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

77.   In January 2024, Kazantzis disclosed to the other Board members, i.e. Hreish and Bourke, an alleged employment agreement purportedly signed in October 2021 by Papas on behalf of ECC as its then-President, purporting to employ Kazantzis as ECC President (the

"Alleged Kazantzis Employment Agreement") in exchange for $165,000 in annual deferred compensation, payable as salary or as equity.

78. The Alleged Kazantzis Employment Agreement was purportedly signed by Pappas just seven (7) days before he himself was forced to resign as ECC's President and CEO.

79. The Alleged Kazantzis Employment Agreement was never approved by the ECC Board.

80. The other ECC Board members, i.e. Hreish, Gerasimowicz and Bourke, were never informed of the terms of the Alleged Kazantzis Employment Agreement until January 2024.

81. Under the Alleged ECC Bylaws, ECC directors and officers serve without compensation unless compensation is approved by the Board.

82. Kazantzis insists that the Alleged ECC Bylaws are true and binding in all respects.

83. Because the Alleged Kazantzis Employment Agreement was never approved by the Board, it is a legal nullity.

84. Because the Alleged Kazantzis Employment Agreement was never approved by the Board, Kazantzis is not entitled to any compensation whatsoever for his work as President.

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment in their favor and against the Defendants, declaring that the Alleged Kazantzis Employment Agreement is a legal nullity and that Kazantzis is not entitled to any compensation thereunder, and awarding such other and further relief that the Court may deem just and proper.

## COUNT III – FRAUDULENT OMISSIONS
*(Pappas's history of corporate wrongdoing and misconduct)*

85. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

86. Starting around 2021, Pappas and Kazantzis convinced Hreish to provide litigation funding for the DE Lawsuit.

87. Team, an entity owned by Hreish, agreed to provide substantial funding on an equity basis, i.e. in exchange for shares.

88. To date, Hreish and Team have invested well over $200,000 in ECC, for purposes of the DE Lawsuit and in exchange for equity.

89. To date, Hreish and Team have also incurred over $50,000 in out-of-pocket expenses related to ECC and/or the DE Lawsuit.

90. To date, Hreish and Team have also invested countless hours and "sweat equity" on matters related to ECC and/or the DE Lawsuit.

91. Hreish and Team would not have invested money in ECC nor incur out-of-pocket expenses nor invested their time and energies in ECC and/or the DE Lawsuit, had they known about the Pappas's many years of misconduct and extensive history of SEC proceedings against him.

92. Pappas and Kazantzis both had exclusive knowledge about the allegations raised against Pappas in the 2005 Envirokare Tech lawsuit, the terms of the Standstill Agreement, and Pappas's violations of the Standstill Agreement, but failed to disclose this information to Hreish and Team when soliciting them for money. Pappas and Kazantzis withheld this information because they knew that, if disclosed, Hreish and Team would not have agreed to invest in ECC.

93. Pappas had exclusive knowledge of the allegations raised against him in the 2016 SEC proceeding, including his admitted violations of the Securities Exchange Act of 1934 as well as the terms of the ensuing SEC Order, but failed to disclose this information to Hreish and Team when soliciting them for money. Pappas withheld this information because he knew that, if disclosed, Hreish and Team would not have agreed to invest in ECC.

94. Hreish and Team reasonably relied on Pappas and Kazantzis to disclose all pertinent information in soliciting them for money and asking them to become ECC shareholders. Had Hreish and Team known about Pappas's sordid history they would not have invested in ECC.

95. Hreish and Team were injured by Pappas and Kazantzis's omissions, including the entire amount of their investment, out-of-pocket expenses, uncompensated time, legal fees and such other and additional expenses incurred in relation to ECC.

### COUNT IV – FRAUDULENT OMISSIONS
*(The Alleged Kazantzis Employment Agreement)*

96. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

97. Starting around 2021, Pappas and Kazantzis convinced Hreish to provide litigation funding for the DE Lawsuit.

98. Team, an entity owned by Hreish, agreed to provide substantial funding on an equity basis, i.e. in exchange for shares.

99. To date, Hreish and Team have invested well over $200,000 in ECC, for purposes of the DE Lawsuit and in exchange for equity.

100. To date, Hreish and Team have also incurred over $50,000 in out-of-pocket expenses related to ECC and/or the DE Lawsuit.

101. To date, Hreish and Team have also invested countless hours and "sweat equity" on matters related to ECC and/or the DE Lawsuit.

102. Hreish and Team would not have invested money in ECC nor incur out-of-pocket expenses nor invested their time and energies in ECC and/or the DE Lawsuit, had they known about the Alleged Kazantzis Employment Agreement.

103. Pappas and Kazantzis both had exclusive knowledge about the Alleged Kazantzis Employment Agreement, in particular that pursuant to the terms of the Alleged Agreement Kazantzis would be entitled to compensation of about $165,000 per year, payable as money or in equity, but failed to disclose this information to Hreish and Team when soliciting them for money. Pappas and Kazantzis withheld this information because they knew that, if disclosed, Hreish and Team would not have agreed to invest in ECC. Hreish and Team would not have agreed to invest money in exchange for equity had they known that the value of their equity in ECC would be diluted by Kazantzis's purported equity under the Alleged Agreement.

104. Hreish and Team reasonably relied on Pappas and Kazantzis to disclose all pertinent information in soliciting them for money and asking them to invest in ECC and to become shareholders. Had Hreish and Team known about the Alleged Kazantzis Employment Agreement they would not have invested in ECC.

105. Hreish and Team were injured by Pappas and Kazantzis's omissions, including the entire amount of their investment, out-of-pocket expenses, uncompensated time, legal fees and such other and additional expenses incurred in relation to ECC.

## COUNT V – BREACH OF FIDUCIARY DUTY
*(The Alleged Kazantzis Employment Agreement)*

106. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

107. In October 2021, ECC's Board was comprised of Pappas, Kazantzis, Bourke and Hreish. Pappas was President, Treasurer, Secretary and a Director, and Kazantzis was a Director.

108. As ECC President, Treasurer, Secretary and Director, Pappas owed fiduciary duties of loyalty, care and candor to ECC.

109. As ECC Director, Kazantzis owed fiduciary duties of loyalty, care and candor to ECC.

110. Kazantzis and Pappas purport that they executed the Alleged Kazantzis Employment Agreement in October 2021.

111. Kazantzis and Pappas did not present the Alleged Kazantzis Employment Agreement for ECC Board approval in October 2021, nor did they do so at any time thereafter.

112. Had Kazantzis and Pappas presented the Alleged Kazantzis Employment Agreement for ECC Board approval, a majority of the Board — i.e., Hreish, Bourke and Gerasimowicz — would have disapproved it.

113. Kazantzis and Pappas did not disclose the existence of the Alleged Kazantzis Employment Agreement to the ECC Board in October 2021, nor did they do so at any time thereafter, until January 2024.

114. On information and belief, in exchange for the compensation provided under the Alleged Kazantzis Employment Agreement, Kazantzis agreed to protect Pappas's personal interest in ECC after he, Pappas, was forced to resign from the Board.

115. In entering into the Alleged Kazantzis Employment Agreement, failing to present it to the Board for approval, and concealing its very existence until January 2024, Pappas and Kazantzis each violated their fiduciary duties of loyalty, care and candor owed to ECC.

116. ECC has been injured by Pappas and Kazantzis's actions and misconduct, including but not limited to the potential liability owed to Kazantzis under the terms of the Alleged Kazantzis Employment Agreement, legal fees and in-house labor and fees incurred in order to take legal action to invalidate it.

## COUNT VI – CIVIL CONSPIRACY
*(The Alleged Kazantzis Employment Agreement)*

117. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

118. In or around 2021, Pappas and Kazantzis entered into an agreement to solicit investments and funding from Hreish and Team, intentionally enticing them with the prospect of attaining a strong equity position in ECC while underhandedly preventing them from attaining majority control.

119. To accomplish this, Pappas and Kazantzis created the Alleged Kazantzis Employment Agreement, purporting to provide Kazantzis $165,000 per year in equity in ECC, and concealed the existence of the Alleged Agreement from Hreish and Team by intentionally never presenting it to the ECC Board for approval.

120. Hreish and Team were injured by Pappas and Kazantzis's concerted actions and intentional misconduct, including the entire amount of their investment, out-of-pocket expenses, uncompensated time, legal fees and such other and additional expenses incurred in relation to ECC.

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment in their favor and against the Defendants, awarding the following relief:

(a) On Count I, declaring that the declaring that all business, decisions and votes taken at the January 2024 Alleged Annual Shareholders Meeting are null and void, and that the true ECC Board of Directors is comprised of Hreish, Bourke and Gerasimowicz, and awarding Plaintiffs their legal fees, costs and expenses, and all additional and further relief that the Court deems equitable and just;

(b) On Count II, declaring that the Alleged Kazantzis Employment Agreement is a legal nullity and that Kazantzis is not entitled to any compensation or equity thereunder, and awarding Plaintiffs' legal fees, costs and expenses, and all additional and further relief that the Court deems equitable and just;

(c) On Counts III, IV, and VI, awarding Plaintiffs compensatory and punitive damages against Pappas and Kazantzis, jointly and severally, in an amount to be determined at trial, plus Plaintiffs' legal fees, costs and expenses, and all additional and further relief that the Court deems equitable and just;

(d) On Count V, awarding ECC compensatory and punitive damages against Pappas and Kazantzis, jointly and severally, in an amount to be determined at trial, and awarding Plaintiffs their legal fees, costs and expenses, and all additional and further relief that the Court deems equitable and just.

Respectfully submitted,

Date: March 26, 2024

/s/ Jonathan R. Miller, Esq.
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540
Tel. (609) 955-1226
Fax (609) 964-1026
Email: jonathan.miller@lawyer.com